Robert Emmett HOULIHAN, Appellant,

v.

The STATE of Texas, Appellee.

No. 58386.

Court of Criminal Appeals of Texas, En Banc.

March 28, 1979.

Rehearing En Banc Denied April 25, 1979.

Dick DeGuerin and Percy Foreman, Houston, for appellant.

Carol S. Vance, Dist. Atty., Clyde F. DeWitt, III, and Ned B. Morris, Asst. Dist. Attys., Houston, and Robert Huttash, State's Atty., Austin, for the State.

## OPINION

CLINTON, Judge.

What is denominated an appeal comes to us after the court below heard a motion to reduce sentence filed by petitioner and declined to grant relief. The motion invoked the "shock probation" provisions of Article 42.12, Section 3e, V.A.C.C.P. The ruling of the court was verbally amplified as follows:

"THE COURT: I think it's a jurisdictional question. The fact that he had probation and a motion to revoke his probation was filed, and he appealed it through the court of this state removes it from this Court's jurisdiction as to whether or not he can get probation again. Actually he had had probation and he is now asking for another probation, so I don't really think it falls within the statute.

"MR. DEGUERIN: So the Court is holding that you have no jurisdiction?

"THE COURT: I have no jurisdiction. Plus the fact I think that he has already had his probation. I don't think he is eligible for shock probation under this statute."

A chronological order of pertinent events concerning petitioner that lead up to the ruling we are asked to review is as follows:

October 13, 1972: Appellant placed on five years probation after plea of guilty for offense of felony possession of marihuana;

April 18, 1973: Motion to revoke probation for again possessing marihuana was filed;

November 25, 1975: After hearing probation was revoked and notice of appeal given;

May 25, 1977: Order revoking probation was affirmed by this Court, *Houlihan v. State,* 551 S.W.2d 719 (Tex.Cr.App. 1977);

June 22, 1977: Leave to file motion for rehearing was denied;

June 24, 1977: Mandate of affirmance was issued by the Clerk of this Court;

June 29, 1977: Alias capias after mandate was issued out of the trial court;

July 12, 1977: Alias capias was executed by arrest of appellant;

July 13, 1977: Appellant was delivered to Texas Department of Corrections;

August 29, 1977: Section 3e, Article 42.-12, V.A.C.C.P., became effective;

October 25, 1977: Motion to reduce sentence was filed in the court below;

November 29, 1977: Hearing on motion to reduce sentence was begun and recessed without ruling;

December 16, 1977: After completing hearing on motion, the court below overruled motion to reduce sentence and appellant gave notice of appeal in open court.

In this Court the relief sought by appellant in his brief is that we *"reverse* the Trial Court and *remand* the case *with directions* to consider the merits of Defendant's Motion for Reduction of Sentence." [1] For its part, the State says, "This court should not take jurisdiction in this action. Petitioner's application should be dismissed."

In several respects this is a matter of first impression, but on the question of the *appellate* jurisdiction of this Court to decide the issues in the posture in which they are presented the answer is settled. *Basaldua v. State,* 558 S.W.2d 2 (Tex.Cr.App.1977) after exhaustively reviewing all grants of power and authority to this Court, through Presiding Judge Onion writing for a majority of the Court, at 558 S.W.2d 5, held:

---

1. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

"We find neither constitutional nor statutory authority which would confer jurisdiction on this court to hear an appeal from an order entered pursuant to Article 42.12, Sec. 6, supra (footnote # 1), altering or modifying probationary conditions or an order, as in the instant case, refusing to alter or modify such conditions. It must be remembered that this is not an appeal from an order granting probation, cf. Article 42.04, Vernon's Ann.C.C.P., nor is it an appeal from an order revoking probation. Article 42.12, Sec. 8, Vernon's Ann.C.C.P. We conclude that this court lacks the authority to entertain a direct appeal from the order entered. See and cf. *Walker v. State* [537 S.W.2d 36 (Tex.Cr.App.1976)], supra; *Hardin v. State,* 157 Tex.Cr.R. 283, 248 S.W.2d 487 (1952); *Morgan v. State,* 135 Tex.Cr.R. 76, 117 S.W.2d 76 (1938); *Griffin v. State,* 29 S.W.2d 349, 350 (Tex.Cr. App.1930). See also *Bretz v. State,* 508 S.W.2d 97 (Tex.Cr.App.1974); *Swanson v. State* [169 Tex.Cr.R. 390, 334 S.W.2d 179 (1960)], supra."

█ While *Basaldua* was decided before the constitutional *writ* jurisdiction of this court was expanded[2] by the November 8, 1977 adoption by the voters of S.J.R. No. 18, Acts 1977, 65th Leg., p. 3359, which became effective January 1, 1978, still that amendment did not enlarge the *appellate* jurisdiction of this Court. In the absence of some newly enacted "regulations as may be prescribed by law," Article V, 5, Constitution of Texas, granting what *Basaldua* did not find, this Court remains without *appellate* jurisdiction to decide the question appellant poses in his brief. The amendment that added Section 3e to Article 42.12 is silent as to right of appeal from a refusal to grant "shock probation," and we neither have been referred to nor located ourselves any other statutory regulation that would permit a direct appeal from denial of such relief on whatever ground. Accordingly we adhere to the holding of *Basaldua* and conclude that this Court lacks authority to entertain a direct appeal against the ruling of the court below in this manner.

█ In earlier times our conclusion would call for this cause to be dismissed for lack of jurisdiction. But, as indicated above, since January 1978, this Court has additional writ powers it may exercise in conformity with applicable principles of law. It has done so in appropriate circumstances on several occasions: *Thomas v. Stevenson,* 561 S.W.2d 845 (Tex.Cr.App.1978), mandamus to compel a speedy trial; *State ex rel. Vance v. Routt,* 571 S.W.2d 903 (Tex.Cr. App.1978), mandamus to set aside judgment for recovery of less than face amount in bond forfeiture case and directing entry of judgment in full amount; *Broggi v. Curry,* 571 S.W.2d 940 (Tex.Cr.App.1978), mandamus to accord right of appeal to a defendant who was not shown by the record to have personally consented to a plea bargain implemented by the court. It has declined to do so on others: *Ex Parte Paprskar,* 573 S.W.2d 525 (Tex.Cr.App.1978), purported appeal from *denial* of motion under Art. 55.01, V.A.C.C.P. to expunge records of arrest; *State v. Henson,* 573 S.W.2d 548 (Tex. Cr.App.1978), purported appeal from *grant* of motion to expunge arrest records. Nor, as we were recently reminded, does the form in which the matter is originally presented control the form of writ by which the matter is disposed.[3] Indeed, in its brief

---

2. Although power to issue certain kinds of writs was added, overall the writ authority of this Court was restricted by insertion of the qualifying phrase "regarding criminal law matters."

3. Odom, J. dissenting in *State v. Henson,* supra, 573 S.W.2d at 551:

"The fact that the matter was not urged as mandamus should not deter us. In *State ex rel. Vance v. Clawson,* Tex.Cr.App., 465 S.W.2d 164, this Court accepted an applica-

tion for writ of prohibition and then disposed of it as an application for writ of mandamus. In *Ex parte Giles,* Tex.Cr.App., 502 S.W.2d 774, a case that started in mandamus concluded in habeas corpus. In *Basaldua v. State,* Tex.Cr.App., 558 S.W.2d 2, what arrived as an appeal left as habeas corpus. *Broggi v. Curry,* Tex.Cr.App., 571 S.W.2d 940 (1978, Odom, J.) saw a habeas corpus application transformed to mandamus. And the case of *Ex parte Clear,* Tex.Cr.App., 573 S.W.2d 224 (Roberts, J.) a multiple applica-

in this case, the State points to other writs that might be considered and, conceding it is "obviously a 'criminal matter'," extends this invitation to the Court: "The only approach is to treat this purported appeal as an application for the extraordinary writ of mandamus." Unlike our response in *Paprskar,* supra, we accept the invitation and proceed to determine whether to direct the court below to consider the merits of the motion for reduction of sentence by granting "shock probation" pursuant to Section 3e, Article 42.12, V.A.C.C.P.

■■■■ The concern about its jurisdiction was expressed by the court below in terms of whether an affirmance by this Court of an order of the trial court revoking probation and pronouncing sentence of confinement in the Texas Department of Corrections precluded subsequent assertion of power and authority by the trial court to hear and determine the motion. We find, for the reasons about to be stated, that in the circumstances of this case the trial court did not lack jurisdiction on the basis of its expressed concern.

First, execution of the sentence imposed by the trial court after revoking probation was suspended by reason of and pending final determination of appeal and issuance of mandate by this Court. Ordinarily receipt of mandate of an affirmance merely triggers the ministerial acts of issuing capias after mandate, Article 44.05, V.A.C.C.P., and a direction to the sheriff to attach to commitment papers a statement assessing conduct while in jail, if the defendant were, Article 42.03, Sec. 4, V.A.C.C.P., and will not vest any further jurisdiction in a trial court to modify the judgment and sentence upheld by this Court. *State ex rel. Vance*

*v. Hatten,* 508 S.W.2d 625, 628 (Tex.Cr.App. 1974); *State ex rel. Wilson v. Harris,* 555 S.W.2d 470, 472 (Tex.Cr.App.1977). What is significant for our purpose here is that the period of suspension of execution of the sentence during appeal terminates with service of alias capias after mandate upon defendant—here July 12, 1977—Article 44.- 11, V.A.C.C.P.; see decisions under predecessor articles such as *Hinman v. State,* 54 Tex.Cr.R. 434, 113 S.W. 280 (1908); *Ray v. State,* 154 Tex.Cr.R. 362, 227 S.W.2d 216, 218 (1950). Thus, on that date, at the earliest, execution of the sentence imposed by the trial court actually began.

Second, Section 3e(a) provides that for purposes of considering "shock probation" the jurisdiction of the trial court in the prescribed conditions "shall continue for 120 days from the date the execution of the sentence *actually begins.*" We cannot, nor need we, know what situations were contemplated by the Legislature when it so obviously carefully used and reiterated the phrase. The language is clear and unambiguous and read literally—we have no valid reason to do otherwise—it means that from the date a defendant actually begins his sentence.[4] The trial court that sentenced him continues to have jurisdiction for 120 days to suspend further execution of the sentence and place the defendant on probation.

Accordingly, as Presiding Judge Onion opined at first blush in his dissenting opinion in *State ex rel. Wilson v. Harris,* supra, 555 S.W.2d at 477, we conclude that the court below did not lack jurisdiction on the basis stated by it—that the motion for relief came after return of our mandate of affirmance.[5]

tion for habeas corpus, mandamus, and prohibition, was ultimately disposed of as habeas corpus, although the substantive relief awarded bears a closer resemblance to mandamus. In each of these cases this Court did not hesitate to dispose of the case under the form of writ considered most appropriate, regardless of the form in which it was originally presented."

4. For purposes of this opinion, we assume that execution of sentence actually began on either the day appellant was arrested and confined in

the Harris County Jail or the following day when he has delivered to the Texas Department of Corrections. It is unnecessary to decide which date was truly contemplated by the Legislature and we do not do so.

5. This conclusion is not intended, and is not to be taken, as holding that the court below *did* have jurisdiction to grant the relief requested by the motion at the time its ruling was stated by the court.

The second ground for denying relief as expressed by the court below was that because appellant had earlier been granted probation he was not "eligible" for "shock probation" under Section 3e. In other words, we construe that the denial is drawn from an interpretation of the statute—a denial in law rather than in fact. While this question is much closer than the first, since the statutory language does not specifically address the point, we believe and find that one is "eligible" in law for consideration of "shock probation" notwithstanding he has earlier been granted probation in the same case.

We begin with the obvious: Nothing in the section can be read to mean that one who has been previously granted probation is ineligible for consideration for "shock probation"—neither one who has successfully completed a term of probation in some other case nor one who "flunked" and had his probation revoked in the same case. Then we note that the section undertakes to provide conditions and standards by which one may qualify for consideration, including "prior to the execution of such sentence, the defendant had never been incarcerated in a penitentiary serving a sentence for a felony . . ." Here is a definite statement of ineligibility that indicates the Legislature considered the matter; that it did not declare ineligible a defendant who had been put on probation—when it could have so easily done so right at this point had it desired—weighs against a judicial determination of such ineligibility. Finally, the very article in which Section 3e was inserted specially preserves the power and authority of the judge of the trial court to grant probation to a defendant regardless of his past record or adverse recommendation from a jury.[6] Sections 3 and 3c, Article 42.12, V.A.C.C.P.—except, of course, as to the offenses prescribed in Section 3f. From this analysis we cannot conclude that the Legislature intended to declare a defendant similarly situated as our appellant ineligible for consideration for "shock probation." To the contrary, we believe and find that one who has previously been granted probation and has either successfully completed his term or has had the term of his probation revoked, but has never been confined in a penitentiary for a felony offense, is eligible for suspension of further execution of his sentence and probation.

Accordingly, we conclude that the court below was probably misled by a reading of "sentence" to mean "defendant" to make the statutory interpretation it did. In any event, the interpretation is not correct for we hold that one who has previously been granted probation is not ineligible for "shock probation" under Section 3e, Article 42.12, V.A.C.C.P.

Now that we have decided the court below gave erroneous reasons for denying relief to petitioner, there still remains the question of whether this Court should direct the court, as prayed for by appellant, to consider the merits of his motion for shock probation. The State raises two barriers in the way of our granting that relief which must be hurdled if we are to do so.[7] First, the State contends that because petitioner was arrested on alias capias before Section 3e became effective it is not availa-

6. In a trial brief presented to the court below the State agreed with this proposition and argued from it that by including language that a defendant be "otherwise eligible for probation" the Legislature must have intended to exclude one who had been on probation. The problem with the argument is the statute requires the "sentence," not the defendant, to be eligible.

7. As a "fallback" position the State translates a statement made by the court below to be a discretionary ruling denying the motion on its merits. Clearly the statute endows the court that reaches the merits wide discretion—"in the opinion of the judge the defendant would not benefit from further incarceration in a penitentiary"—but since the court did not particularly allude to that factor, we prefer to believe the judge did not really reach the merits. Of course, if the court had considered the merits and denied relief after consideration, mandamus would not lie. It is axiomatic that the writ of mandamus may not be utilized to revise or correct error in discretion committed in exercise of a judicial duty unless in the particular case there is a clear abuse of discretion. See *Womack v. Berry*, 156 Tex. 44, 291 S.W.2d 677, 682 (1956); *State v. Markle*, 363 S.W.2d 332, 335–336 (Tex.Civ.App., Houston 1962).

ble to him since jurisdiction of the court already "lost" cannot "continue." [8] The argument is appealing but not persuasive for we doubt that Section 3e is an amendment to a statute with respect to which punishment has been incurred or an amendment reducing punishment for any offense; rather, we perceive that the provisions of Section 3e are more procedural in nature in that they provide a means whereby a court may suspend further execution of sentence. In any event, we do not strain the intent and purpose, or the language, of Section 3e by noting that its provisions were in effect when the motion to reduce sentence was filed so that the jurisdiction of the court to decide the motion was thereby invoked.[9]

 The State contends that the December 16, 1977 ruling of the court below came after jurisdiction had terminated and, therefore, is a nullity. With this contention we do agree and, accordingly, may not direct the court to consider the merits of appellant's motion for shock probation.

Section 3e(a) uses language concerning "jurisdiction" of a trial court in this special situation that, once again, is clear and unambiguous:

". . . the jurisdiction of the courts . . . shall continue for 120 days . . . . After the expiration of 60 days but prior to the expiration of 120 days . . . the judge of the court . . . may . . . suspend further execution of the sentence imposed and place the defendant on probation . . ."

Plainly and unequivocally the Legislature sought to accomplish two purposes: One, to expand jurisdiction for 120 days and, two, to require a ruling by the court in the second 60 day period. Taken together the two provisions admit of no other construction than that jurisdiction to act ceases when the 120 day period has expired.[10]

Appellant, however, points to decisions of United States Courts of Appeals construing Federal Rule 35, F.R.Crim.P., for the proposition that the 120 day period contemplates only filing of a motion rather than ruling of the court, as in, e. g., *United States v. Stollings,* 516 F.2d 1287 (4th Cir. 1975). But even *Stollings* and like decisions agree that "a strictly literal reading" of Rule 35 applies the time limit to the ruling of the court, but as characterized by Wright, 2 Federal Practice and Procedure 573, Sec. 587, the courts have avoided "so singular a result" by holding the time limit applies to filing a motion for relief rather than ruling by the court. Unlike Rule 35, Section 3e is cast in terms of "jurisdiction" of the court to act during the second 60 day period and within the deadline prescribed. Thus, opinions of Federal courts that refuse to follow their own "literal reading" of Rule 35 that would require the same result we reach here are not persuasive. In this connection, we note the United States Court of Appeals for the Fifth Circuit, on the other hand, has held the period is jurisdictional and power of a federal district court to act does not extend beyond the 120 day deadline, *U. S. v. Norton,* 539 F.2d 1082 (5th Cir. 1976) but

8. The State refers us to the Code Construction Act, Article 5429b–2, Section 3.11(a)(3) and (b), declaring saving provisions in situations therein described.

9. Moreover, we prefer not to rule the case on this basis for, as we see it, a more serious question likely to arise generally throughout the State is presented and should be determined here for guidance to the bench and bar.

10. The State would have us support our reading of the statutory provisions by analogizing from failure of the court to rule on motion for new trial under Article 40.05, V.A.C.C.P., or to act on a bill of exception under Article 40.09, Section 6, V.A.C.C.P. But in Section 3e the Legislature did not expressly state the conse-

quence of a failure to rule within 120 days. Thus the analogy is too imperfect to lead us in this different situation, and we do not hold that a Section 3e motion is overruled by operation of law if not acted upon within the 120 day period of jurisdiction. In this unique situation the legislative intent is best served by simply regarding a failure to rule within 120 days as just that, and no more. To equate a failure to rule with a denial of "shock probation" might conceivably impart such unforeseen consequences that we are unwilling to sanction blindly the drawing of any conclusion that may be said to follow from a denial of "shock probation."

more recently in *United States v. Mendoza,* 581 F.2d 89 (5 Cir. En Banc 1978) modifying 565 F.2d 1285, the Fifth Circuit held that a federal district court retains jurisdiction for a reasonable time after 120 days to rule a motion that was filed during the 120 day period.

If applying our own literal reading to Section 3e is thought to bring on "devastatingly and arbitrarily fortuitous" consequences, the solution is similar to that suggested by the dissent in *Stollings,* supra, 516 F.2d at 1290:

> ". . . It is my opinion that this (remedial purpose of majority) should be brought about by an amendment to Rule 35 . . . and not through a ruling by Federal court."

So here, the forum to petition for redress for relief from untoward consequences of clear meaning of unambiguous statutory language is the Legislature that enacted it.

Holding as we do, then, that the court below lost jurisdiction before it denied relief on the grounds stated, the prayer for mandamus directing the court below to consider the merits of the motion for shock probation must be denied.

Treating the purported appeal as an application for writ of mandamus, the writ is denied for want of jurisdiction in the court below to grant relief sought by petitioner under Section 3e, Article 42.12, V.A.C.C.P.

It is so ordered.

DOUGLAS, DALLY and W. C. DAVIS, JJ., concur in result.

PHILLIPS, J., dissents.